Dr. Schachar developed an alternative theory of treating presbyopia in which you could actually treat it so that you would have no need for reading glasses. In the context of creating the prosthesis that are at issue in this case, he developed the prosthesis in a way that it circled the eye in the prior arc. It was a round band that treated presbyopia by pulling on the sclera, which is the white part of the eye, around the pupil. And when the pupils pulled out, it allows the lens once again to regain its flexibility so that it allows a were allowed by the office? Yes, that's correct. In trying to understand just really what the issue is, it wasn't whether or not Dr. Schachar made an invention, but as the office kept stressing, if in fact your claims appear to read on prior art, this is the time in which you should make them more precise, more exact. And so I'm not really sure what it is that's being argued about. That's really an invitation to be specific, to have the claims match the specification, not to seek claims that the office says is sufficiently broader than what was actually invented as to invoke the prior art. All you're going to end up with perhaps is claims that you'd have difficulty enforcing. Yes, your honor, I'll address that issue now. When we look at claim one, we're looking for limitations, and those limitations in claim one involve the latter half of the claim, in which it reads, the body of the prosthesis having a planned form that, and the word that is a defining term, which means that what follows a matter of mathematical interpretation is a limitation. And what follows the word that, it says that expands the contacted sclera to increase the effective working distance of the ciliary muscle. So therefore, the limitation that's contained in the claim is that the actual planned form, the shape of the body, is what lifts the sclera in the instance of the claim, and that it does so by the actual contact of the planned form, the body itself, as opposed to the prior art, which consists of a ring, where the ring acts as an anchor, and the sutures that go outside the ring and under the sclera and back are actually what lifts the sclera. In essence, if you take the hose clamp that's pictured in the government's brief and placed it on a white pillow, it would be a sclera and just let it sit there on its own. It wouldn't lift the sclera in any manner, whereas in claim one, the device itself lifts the sclera. But claim one uses the word sutures in addition to the recited planned form, does it not? That's correct, your honor, and the interpretation that we're arguing today has to do with that where does the comprising phrase end in the interpretation reasonably, and we're arguing that comprising a body having a first end and a second end is where the comprising clause ends, and that where you start the next part of the claim. Well, on what basis would you read the claim that way? Comprising is the transitional phrase from the preamble to the body of the claim, including all of the recited limitations. Simply that comprising speaks to a body, and a body that has a first end and a second end, but then after the word that there's a restriction that we can't read out of the claim, and in the board's decision they simply eliminated that last 17 words, which has two very important limitations contained in it. So that the word comprising, and if when we look at the specification all the way throughout the application, including the other patents that are incorporated, it's clear, it would be clear to a person who read that and was recently experienced in the art, that what we're talking about here is a prosthesis that itself contacts the sclera and pushes up the sclera, and not something, not a prosthesis that requires stitches where the sclera is actually lifted in an area that's away. But if that's what, if that's the protection that your client desires, why not make that clear in the claim and avoid this dispute? Well, your honor, there were proposed amendments to the solicitor to make changes to the claim. Those were rejected. I suppose there would always be a manner in which to restate a claim that may or may not be better. However, for the purposes of today's argument, and for this case in particular, where we have the words that we have in the claim, and we have to interpret the meaning of those words, and whatever meaning you want to attach to the words, it seems to be unreasonable to read out a large portion, meaning 17 words at the end, that contain as a matter of restriction or limitations. So the answer to your question, your honor, is yes, that could have been done. They could have been redrafted or drafted differently. Maybe I'm oversimplifying, but just as a follow-on to Judge Moon's question, if you had put the word free ends in there as opposed to ends, wouldn't that have resolved this matter? Yes, it would have, but that's... And did you ever offer the solicitor's office to do that? I mean, was that one of the amendments you proposed? Are it seems to me, perhaps I'm wrong, that that would probably have resolved this case, and I'm wondering why you were unwilling to do that. Your honor, our position is that the claim as written can only have freestanding ends. I understand that, and therefore, you know, the prosecution history, you would not be able to enforce this patent for other than free ends, but why not put... Is there something that precluded or, you know, made your client resist putting that word in to resolve this issue? I mean, we wouldn't be here, I presume, arguably, if that were done. So why wasn't that done? What am I missing here? Well, it could have been done, and it wasn't done, and at the moment, I don't know exactly why it wasn't included. I don't know. Is it available to negotiate claim changes with the solicitor? I suppose it is, or would it be remanded to the examiner? How would that work? Yes, it's available to negotiate with the solicitor or propose amendments to the solicitor through the solicitor's office at this stage, and there were proposed amendments to clear up the issues that were raised by the board, and they were rejected, so we're left, and that's why we're here, left with the claim as it stands right now, and we can interpret, or we should interpret, if we include the restrictive clause that I refer to, this claim to include only a device that has freestanding ends. But that wasn't one... You said there were efforts made at some amendments. That wasn't one... Was that one of the suggestions or efforts made to make that modification? Your Honor, I'll have to address that when we're done. I don't have that ready at my hands. And Your Honor, you touched on our second argument, which is essentially disclaimer or estoppel. If you look at the entire prosecution history of this case from its inception and from the inception of the that there was never an argument made that this device in claim one would include overlapping and or attached ends. Well, that's why I'm wondering why you just didn't put in the words to simplify it. If you agree, I mean, so what could your client have possibly been after if you view that as already having been concession made? So I'm wondering why we're here. Well, if we look at the specifications as a whole and including the drawings, especially, there's no way that a person who is trained in the art would look at that entire specification, especially the drawings, and conclude that we're dealing with a device that has overlapping or the claim language was incorporated that in light of the specification, they felt that it was clear that there could not be overlapping ends in this device. But isn't the problem because you do have claims which cover the devices shown in the drawings and the device that's specifically described? And the concern of the office is that the breadth of the claim seems to reach into the space, as you mentioned, until you get to the prior art. But to say I claim everything that's not in the prior art requires a supporting specification of everything that's not in the prior art, and that they propose that you should restrict your claims. Yes, Your Honor, and there's a substantial part of claim one that is extremely broad. The first part, having a body having two ends, essentially, that is extremely broad, but it is narrowed by the limiting language beginning with the word that. And this issue was never addressed by the board. They didn't even cite the language of the limiting language that's included in claim one. So yes, there are elements, a substantial number of elements in the claim that are contained in the prior art, but the issue is that we also have imitations in the claim that are not and cannot be interpreted to be included in the prior art. So therefore, this matter must be reversed under circumstances where we have these elements that are included in the prior art. And moreover, the board did not address those words and effectively read them out of the claim. And as a fundamental principle of interpreting the claim, one interpretation that would not be allowed would be one where you read a substantial part of the claim out, and especially a part of the claim that comprises limitations that distinguish the claim from the prior art in question. And the board's discussion of this issue was very short and focused on the broad parts of the claim, which admittedly are very broad, and never addressed the important issue, which is whether the specifications fall outside the scope of the prior art, and of course they do. Okay, thank you. We'll save the rest of your time for the rebuttal. Good morning, Your Honors. Sketchers' claims are much broader than the invention he described in his arguments, and I guess the first thing that I'd like to do is discuss a little bit about the settlement. Normally I wouldn't present such a discussion to the court, but the genie has been let out of the bottle. Initially what had happened was when this case first came to the solicitor's office, unlike most of our cases in this rare circumstance, we said, well maybe they do have a patable invention here, but they just had some poor drafting. They have used up their opportunities before the examiner to amend their claims to narrow them in scope towards what they've actually invented. So we approached the appellant and we gave an opportunity to present to us some language that we might present to the patent court. As Your Honors may know, the patent court acts independently, and when we presented those proposed amendments to the patent court, the patent court deemed them insufficient and said additionally they had several related applications pending in which they could present these, those narrow claims, but in this application the court felt that they had given them plenty of opportunity, and they did. They had several opportunities before, they had several opportunities before the examiner to actually provide that public notice function, to narrow their claims, to change the words of their claims, to match what it is that they are putting only in argument their invention is. Is this process that you described, I mean they prevailed before the board on a number of their issues, correct? A number of the rejections. Does process occur before they went to the board or after? It was after they had come from the board. So it just involved this one isolated... It just involved this one rejection that was affirmed by the board. We had discussed it with the board because even the board had agreed that it was just bad drafting, and in order to address the equities... So the draft, what they, did they ever propose free or unattached? No. In that case they wanted to write into their claims what different but similar in some sense language that would correspond to maybe what was in their allowed claims, which where they actually define the mechanism by which the claim is extremely broad. You just need a... You have a prosthesis with a body with a first end and a second end, and in context it expands the sclera. It doesn't state that the ends have to be free or unattached. In fact, the specification indicates that the ends can be attached, and it doesn't, by use, as Jess Lynn correctly pointed out, they use the word comprising, so that means their prosthesis can be used with the aid of sutures and other things, and their claim does not define how you expand the sclera, and that's found in their allowed claims in this application, and in the claims they point to... Why does it have to say how? You don't have to put how something works in the claim unless you're claiming the method. Well, they have to describe how, in this case, to get over the prior art, to get over their own earlier patent application. At least that's one method. As Judge Prost pointed out, another method would be to define whether the ends could be free or unattached. I thought the board's position was that it was necessary to include enough structure to clearly distinguish from the prior art. Well, there are several ways they could have distinguished over this particular piece of prior art. They availed themselves of none of those ways, and as this Court has repeatedly said, the Patent Trader Office must give claims their broadest reasonable interpretation, and you focus on the claims and the specification, and that's fair because the applicant has a chance to amend. Unlike a patent that's already issued, the applicant here had opportunities to amend. They didn't use those opportunities. Office actions came and went, and they never amended their claims. Mr. Boutros says he doesn't have to amend because he has these last 18 words about expanding the contacted sclera and so on. Well, if you look into the prior art, if you look to the prior art, his own earlier patent application at A113, and you look to lines 36 through 40, this whole concept of lifting and expanding, if you look in the prior art, his currently claimed invention, if you look in the specification and in his earlier patent, can be inserted into a pocket within the sclera, and by being inserted into that pocket, will push up on the overlying tissue. If you look at line 39, you'll see it talks about the overlying tissue. So when he said here it's like a ring being placed on a pillow, not necessarily. That's only his preferred embodiment in the prior art. If you look to the unillustrated embodiments in his prior art, which are what has been cited by the board, you'll see that there's a very similar mechanism of action. They're both placed into a pocket. And so he knew what was being cited against him, and he knew the reasons why, and there was never an amendment made. You started with a broad claim, you ended with a broad claim, and there just wasn't any sort of amendment claimed. And this court, again, in several cases, has said, you know, it's the duty, the onus is really on the applicant to amend their claims, to clarify what it is that they're claiming, that that serves the public, that you have these opportunities to provide that notice to the public. So on the one hand, you have Shacker arguing that his claims are narrower than what is written in his claims and his specification on argument alone. And then on the other hand, you have him arguing that his earlier patent is narrower than what it says in its claims and in its specification, based on other of his patents. And ultimately, it's because Shacker has wasted the opportunity to amend his claims, to clarify the ambiguity, that in cases like In Re Vigio and In Re Thift and In Re Academy of Sciences, this court has said, you know, it's his responsibility to make those clarifications, and he hasn't done that. And I guess I would like to talk about one last point before I close. The point that he argues about in his brief about these ends ceasing to exist once in the prior art device is closed, I'd like to point out that this is not a hula hoop like he says in his brief. When a hula hoop is joined to form a ring, you have a seamless final product. And in the prior art that's cited against him in his own earlier prosthesis, you have two overlapping ends that are held together by a tangential screw. So they're never put together sort of bluntly as a seamless product, you end up with two things where you have these overlapping ends with a screw between them. So it is more like a bout, and more like the analogy presented by the solicitor. And any clarification that Shacker wanted to make, to make his claims patentable over that prior art, that was his responsibility. The responsibility, he never met that responsibility. I think your honor is going to have further questions. Okay, thank you, Ms. Kelly. Mr. Boutrous. What we're proposing in our argument is not a narrower interpretation of the claim. It's an process. Obviously, the words used in the claim are critically important. And yes, as I said earlier, a claim can always be draft better, perhaps this one as well, or especially so. Nevertheless, that does not separate ourselves from the process that we're mandated to follow, which is to interpret the claim. And that means the entire claim in the specific language as well. Now, with respect to the issue of having ends or not having ends, what that really boils down to is that the prior art has ends that overlap. And part of the function of these ends is that they're attached to a circumference, a circle, that attaches to sclera. But that's not the area where the sclera is lifted. So, the difference in the claim one device is that, number one, the ends have to be unattached based on the limitations. And on those ends, it actually does lift the sclera. So, if we look just at does this have the words ends in the prior art, and are there ends in the claim, that's not sufficient to just separate those words into a vacuum. What needs to be done is to look at them in the context of the claim where it ends. And there is a significant difference, a limitation in claim one that does not exist in the prior art, such that the ends in claim one can only be freestanding, which contrasts to the opinion of the board. Thank you. Thank you, Mr. Boutros. Ms. Kelly, case is taken under submission.